**Empire State** Development

April 4, 2011

*By ECF*

Honorable Eric N. Vitaliano, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *Brooklyn Height Ass'n, et al., v. National Parks Service, et al.,* 11-CV-0226 (ENV)

Dear Judge Vitaliano:

  I represent defendant Brooklyn Bridge Park Development Corporation ("BBPDC") in the above-referenced action.  BBPDC requests the Court's leave to file a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  In accordance with Your Honor's rules, BBPDC respectfully submits this letter setting forth the legal and factual grounds upon which it seeks to file its motion and requests that the Court schedule a pre-motion conference.

  I understand that all other defendants in this case will be filing requests for leave to move for summary judgment today.  Specifically, I understand that counsel for the National Parks Service and Kenneth Salazar (jointly, "NPS") is requesting leave to move for summary judgment based on the administrative record, which supports the NPS determination that the Tobacco Warehouse and Empire Stores, and two parcels of privately-owned property, were included on the Land and Water Conservation Fund ("LWCF") § 6(f) map in error and were properly removed from that map.  BBPDC joins the NPS request and explanation for its motion, and supports the briefing schedule proposed by counsel for NPS.

  Plaintiffs' Amended Complaint (the "Amended Complaint") alleges but a single cause of action against BBPDC: violation of the Public Trust Doctrine (the "Doctrine").  As explained briefly below, plaintiffs' case against BBPDC is fatally flawed, since the Doctrine does not apply to the State-owned land at issue in this case and, even if it did, the Doctrine was not violated.

  A. *Brief Summation of the Facts*

  Plaintiffs' Amended Complaint alleges in a footnote to ¶ 10 that "BBPDC is the successor-in-interest and the current title holder to the Tobacco Warehouse."  That is true, but incomplete.  In fact, as Plaintiffs cannot but concede, BBPDC owns title to the entire area of land contained in the contested § 6(f) map.  BBPDC obtained title to this land by Letters Patent (the form of deed used to convey State land) from the State Commissioner of General Services ("OGS") dated July 8, 2010.  OGS had obtained

jurisdiction over the land pursuant to a December 4, 2009 Abandonment Declaration by the NYS Office of Parks, Recreation and Historic Preservation ("State Parks") that the land was surplus to State Parks' needs, a determination expressly permitted the Public Lands Law § 30-a that allows OGS to dispose of such unappropriated State land.

BBPDC is a wholly-owned subsidiary of the New York State Urban Development Corporation ("UDC") which, pursuant to § 4 of the Urban Development Corporation Act (McKinney's Unconsolidated Laws §§ 6251 – 6292) ("UDC Act"), is "a corporate governmental agency of the State, constituting a political subdivision and public benefit corporation." Pursuant to § 12 of the UDC Act, "subsidiary corporation shall have all of the privileges, immunities, tax exemptions and other exemptions of [UDC] …".

OGS transferred title to the land at issue here to BBPDC, pursuant to § 13-a of the UDC Act, which provides that unappropriated State land may be transferred by OGS for UDC's corporate purposes. The OGS Letters Patent conveyed title subject to a restriction that part of the land, not in issue in this case, was to be maintained for outdoor public recreational use, but did not so restrict the Tobacco Warehouse and Empire Stores. As to the Tobacco Warehouse, the Letters Patent provided in its "subject to" conditions of transfer that "[n]o demolition, alteration, remodeling or excavations shall be undertaken with respect to the Tobacco Warehouse, the Empire Stores building, except in accordance with the Second Amended Letter of Resolution among [OGS], [State Parks], [UDC] and the Brooklyn Bridge Park Development Corporation, dated February 26, 2010." By letter dated January 20, 2011, State Parks duly approved the redevelopment of the Tobacco Warehouse pursuant to the said Letter of Resolution.

In 2005, BBPDC established a General Project Plan ("GPP") for the land which was adopted and affirmed by UDC in January, 2006. The GPP contemplated the leasing of the Project land to the City of New York (the "City"). In 2010, BBPDC authorized the execution of a Master Ground Lease over the land to the Brooklyn Bridge Park Corporation ("BBPC") a City not-for-profit corporation. BBPDC leased the Brooklyn Bridge Park Project land to BBPCf or a term of 99 years, as authorized under § 9(1) of the UDC Act: "... [UDC] may sell or lease for a term not exceeding ninety-nine years any civic project … to any municipality or agency or instrumentality thereof … which is carrying out a community, municipal, public service or other civic purpose." A "civic project" is a "project designed … [to provide] facilities for educational, recreational, community, municipal, public service or other civic purposes." UDC Act, § 3(6)(d).

The Master Ground Lease to BBPC specifically allows it to develop the Tobacco Warehouse and Empire Stores. BBPDC retains some essentially ministerial jurisdiction, including the approval if requested of a Master Sub-Lease to an entity selected by BBPC to develop the Tobacco Warehouse. BBPC issued an RFP for development or adaptive re-use of the Tobacco Warehouse, and St. Anne's Warehouse, Inc. was conditionally designated as the developer. To date, BBPDC has not been requested to issue a Master Sub-Lease for the Tobacco Warehouse. In short, the land in issue here was and remains State-owned, although it is controlled by BBPC under the Master Lease.

B.  *Plaintiffs' State Law Claims Against BBPDC*

The Amended Complaint asserts a single cause of action under State law against BBPDC for violation of the Public Trust Doctrine (the "Doctrine"), which prohibits the alienation without Legislative authority of dedicated parkland. This claim fails as a matter of law. While the Doctrine has an ancient history, and often has been applied in New York to municipal actions concerning municipal-owned parkland in cases spanning more than a century, there is not a single decision applying the Doctrine to State parkland. That is because the State, as sovereign, has granted general statutory authority to its agencies to alienate parkland, including the Public Lands Law and the UDC Act cited above. Indeed, the Plaintiffs concede as much in ¶ 196 of the Amended Complaint, alleging that "[i]n 1913, the State Legislature codified the [Doctrine] in Section 20(2) of the General City Law." However, that section provides in relevant part that "the rights of a city in and to *its* …, parks, and all other public places, are hereby declared to be inalienable ... ." (emphasis added). But the land at issue here is not the City's; it is BBPDC's property, and BBPDC is a State corporate governmental agency.

Further, the Amended Complaint cites, at ¶ 192, the leading decision of the Court of Appeals in *Friends of Van Cortlandt Park v. City of New York*, 95 N.Y.2d, 623 at 631-32 (2001) for the proposition that "legislative approval is required before parkland can be alienated for non-park purposes." But Plaintiffs omit the rest of the cited paragraph, where the Court states: "*where a municipality holds title to land for public use* 'the power to regulate those uses (is) vested solely in the legislature.' That proposition is reflected both in our case law and in our statutes ..." 95 N.Y.2d at 632, quoting *Potter v. Collis*, 156 N.Y. 16, 30 (1898) (emphasis added). The facts here are not within the proposition.

Even if the Court were to apply the Doctrine to this State-owned parkland, the State's transfer to BBPDC was appropriately authorized under UDC Act § 13-a. Equally, the ground lease to BBPC is authorized under § 9(1) of the UDC Act, quoted above. It is well established that "state laws of general application may authorize discontinuance of parkland for public purposes…" *United States v. City of New York*, 96 F. Supp. 2d 195, 205 (E.D.N.Y. 2000). BBPDC's ground lease to BBPC is for public purposes, and is consistent with the terms of title conveyed by OGS. Both the Letters Patent and the Master Ground Lease make clear that use of the Tobacco Warehouse is not limited to open space, and both anticipate that the structure could be redeveloped and/or reused.

BBPDC accordingly requests permission to file a motion for summary judgment. Thank you for your consideration of this request.

Respectfully submitted,

Simon Wynn (SW 0807)

Cc: All counsel of record (by email)