UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
BROOKLYN HEIGHTS ASSOCIATION, INC.,
JANE MCGROARTY, FULTON FERRY
LANDING ASSOCIATION, JOAN ZIMMERMAN,
and THE NEW YORK LANDMARKS
CONSERVANCY,

                                          Plaintiffs,                        **MEMORANDUM & ORDER**

                  -against-                                 11-CV-226 (ENV) (VVP)

NATIONAL PARK SERVICE, KENNETH
SALAZAR, BROOKLYN BRIDGE PARK
DEVELOPMENT CORPORATION, BROOKLYN
BRIDGE PARK CORPORATION, and ST. ANN'S
WAREHOUSE, INC.,

                                         Defendants.
-------------------------------------------------------------------x

**VITALIANO, D.J.**

      Plaintiffs Brooklyn Heights Association, Inc., Jane McGroarty, Fulton Ferry Landing Association, Joan Zimmerman, and the New York Landmarks Conservancy filed this action against defendants National Park Service and United States Secretary of the Interior Kenneth Salazar (collectively, "NPS"), as well as Brooklyn Bridge Park Development Corporation ("BBPDC") alleging violations of federal regulatory law and state common law. Two additional parties, Brooklyn Bridge Park Corporation ("BBPC") and St. Ann's Warehouse, Inc. ("St. Ann's"), have been joined as defendants after the Court granted their motions to intervene. Plaintiffs' claims arise under the Land and Water Conservation Fund Act of 1965 ("LWCFA"), 16 U.S.C. § 460*l*-8, and its implementing regulations promulgated at 36 C.F.R. Part 59; the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332, and its implementing regulations promulgated at 40 C.F.R. Part 1502; the Administrative Procedure Act ("APA"), 5

1

U.S.C. §§ 550-559, 701-706; § 106 of the National Historic Preservation Act of 1966 ("NHPA"), 16 U.S.C. §§ 470a to 470w-6; and New York's public trust doctrine.

On April 8, 2011, the Court granted plaintiffs' motion for preliminary injunction, setting aside NPS decisions issued December 12, 2008 and February 14, 2011, and enjoining any alteration or construction in connection with any use of the two historic structures at issue in this case, the Tobacco Warehouse and Empire Stores. Brooklyn Heights Ass'n, Inc. v. National Park Service, No. 11-CV-226, 2011 WL 1356758 (E.D.N.Y. Apr. 8, 2011). No state law issues were briefed or ruled upon at the preliminary injunction stage.

Now, plaintiffs, BBPC, and BBPDC have each moved for summary judgment pursuant to Fed. R. Civ. P. 56, and, additionally, BBPC has also moved for dismissal of the public trust doctrine claim for failure to join a required party under Rules 12(b)(7) and 19. On their motion, plaintiffs seek final judgment on both their federal and state claims. BBPC and BBPDC argue in opposition that (a) the Court should abstain from deciding the state law claim, and (b) if deciding the state law claim, should grant summary judgment on it to BBPC and BBPDC. St. Ann's has joined BBPC's motion. NPS opposes plaintiffs' motion for summary judgment on the federal claims.

Upon due consideration, plaintiffs' motion for summary judgment is granted on the LWCFA and APA claims, and, as a result, the NPS decisions are vacated and declared void, and the matter is remanded to NPS for further administrative proceedings. The remaining federal claims are dismissed without prejudice as moot. Moreover, given that all federal claims have been summarily disposed, the Court declines to exercise its supplemental jurisdiction over the state law claim, which is dismissed without prejudice. The reasons for the Court's determinations follow.

I.  **BACKGROUND**

Familiarity with the facts, statutory and regulatory framework of federal grants made pursuant to the Land & Water Conservation Fund ("LWCF"), administrative record, and procedural history of the subject NPS decisions is presumed. See Brooklyn Heights Ass'n, 2011 WL 1356758, at **1-8. Indeed, the parties' factual assertions and legal arguments on the federal claims remain essentially unchanged from those advanced on the preliminary injunction motion, with only one notable exception.[1] BBPC has reasserted that the New York State Office of Parks, Recreation, and Historic Preservation ("OPRHP") made a mistake when it included the Tobacco Warehouse and Empire Stores on the § 6(f) map submitted in its grant application to NPS in 2001 and submitted again to NPS in the closeout documentation in 2003. In particular, BBPC alleges that two privately owned parcels were also included on the 6(f) map, creating a question of fact that renders summary judgment improper.

However, as BBPC's federal co-defendants correctly argue — and as this Court previously noted in its preliminary injunction decision — judicial review of agency actions is generally limited to the administrative record, absent circumstances not at issue here. Any "after-the-fact rationalization for agency action is disfavored," Yale-New Haven Hosp. v. Leavitt, 470 F.3d 71, 81 (2d Cir. 2006), and thus a court "may not 'properly affirm an administrative action on grounds different from those considered by the agency.'" Forest Watch v. U.S. Forest Serv., 410 F.3d 115, 119 (2d Cir. 2005) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 459 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); Envtl. Def. Fund, Inc. v. Costle, 657 F.2d 275, 284

---

[1] The parties have also advanced arguments concerning the scope of relief, to be discussed infra.

3

(D.C. Cir. 1981) ("It is well settled that judicial review of agency action is normally confined to the full administrative record before the agency at the time the decision was made . . . not some new record completed initially in the reviewing court."). As a result, the Court will not consider BBPC's proffered evidence on the federal claim, as it lies outside the administrative record.

## II.   CONTROLLING PRINCIPLES OF LAW

### A.   Summary Judgment

A court must grant summary judgment upon finding that "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509 (1986). To decide whether summary judgment is proper, "the court cannot try issues of fact but can only determine whether there are issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 15-16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986); Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004). A court must construe all evidence in the light most favorable to the nonmoving party, resolving all ambiguities and inferences in its favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).

If the moving party makes a prima facie showing that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and set forth "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e); Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002), without reliance on "conclusory statements, conjecture, or speculation," Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). Ultimately, the court

shall decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52, 106 S. Ct. at 2512.

### B.    Administrative Procedure Act

Under APA review of a final agency action pursuant to 5 U.S.C. §§ 702 and 704, a reviewing court "shall decide all relevant questions of law, interpret . . . statutory provisions, and determine the meaning or applicability of the terms of an agency action" and shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706.  Pursuant to this deferential standard, the agency action shall not be set aside unless the agency "has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658, 127 S. Ct. 2518, 2529 (2007) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 2867 (1983)).  The "reviewing court must be certain that an agency has considered all the important aspects of the issue and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." Forest Watch, 410 F.3d at 118-19 (2d Cir. 2005) (quoting Henley v. FDA, 77 F.3d 616, 620 (2d Cir. 1996)).  If a court determines that an agency action violated the APA standard, the proper course is for the action, findings, and conclusions to be vacated, then

5

remanded to the agency for further administrative proceedings consistent with the court's opinion. See 5 U.S.C. § 706; Defenders of Wildlife, 551 U.S. at 658, 127 S. Ct. at 2529-30.

Deference is also owed to an agency's construction of the statutes governing it, under the Chevron doctrine. This analysis involves two steps. Initially, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress," but, however, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781-82 (1984); see also, e.g., New York Currency Research Corp. v. Commodity Futures Trading Comm'n, 180 F.3d 83, 88 (2d Cir. 1999). At the end of the day, "an order may not stand if the agency has misconceived the law." Chenery, 318 U.S. at 94, 63 S. Ct. at 462 (1943).

As for the regulations promulgated by an agency, it is axiomatic that "an administrative agency must adhere to its own regulations." Singh v. U.S. Dep't of Justice, 461 F.3d 290, 296 (2d Cir. 2006). Fidelity to the regulations is required "even if [they] were not statutorily or constitutionally mandated," but "an agency's interpretation of its own regulations is entitled to substantial deference 'unless it is plainly erroneous or inconsistent with the regulation.'" Bergamo v. Commodity Futures Trading Comm'n, 192 F.3d 78, 79-80 (2d Cir. 1999) (internal citation omitted) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S. Ct. 1215, 1217 (1945)).

III. DISCUSSION

    A. **Plaintiffs' Federal Claims**

With no substantive changes to the factual allegations or legal arguments previously advanced by the parties on the motion for preliminary injunction, the Court's reasoning then is fully applicable now without need for elaborate recapitulation. After again reviewing the administrative record and relevant law, construing all evidence and inference in the light most favorable to defendants and affording all proper deference to NPS's decisions and interpretation of the applicable statutes, it is clear that the evidence "is so one-sided that [plaintiffs] must prevail as a matter of law." Anderson, 477 U.S. at 251-52, 106 S. Ct. at 2512. Highlights of the Court's findings and conclusions are more than sufficient to make the point.

First, factually, NPS's revisionist administrative review of the original grant to OPRHP resulted in a conclusion that was both "counter to the evidence before the agency" and "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Defenders of Wildlife, 551 U.S. at 658, 127 S. Ct. at 2529. Overwhelmingly, the evidence points to only one finding: the absence of any mistake by OPRHP in the inclusion of the Tobacco Warehouse and Empire Stores on the 6(f) maps submitted in 2001 and 2003. Indeed, both the obvious purposefulness of the inclusion of the structures — as well as the planning for the eventual Brooklyn Bridge Park that foresaw the Tobacco Warehouse as a "walled garden" and Empire Stores capped with a rooftop garden — yields the clear and obvious conclusion that OPRHP fully intended to include the structures on the 6(f) map and fully understood the consequences of that action under applicable federal law.

Second, legally, NPS's interpretation of LWCFA, allowing it to excise properties from a final 6(f) map after the close of a grant if they are later deemed "unsuitable" or "not intended for" public outdoor recreation use, is flatly impermissible and directly contrary to established law. NPS's interpretation was precisely the one adopted by the district court — and later

7

rejected by the Second Circuit — in <u>Friends of the Shawangunks, Inc. v. Clark</u>, 754 F.2d 446 (1985). The intended or actual use of the Tobacco Warehouse and Empire Stores is irrelevant to the question of whether the structures are protected under 16 U.S.C. § 460*l*-8(f)(3). They unquestionably are. Further support for this interpretation comes from NPS's own regulations as well as its LWCF grant manual. <u>See</u> 36 C.F.R. § 59.3(a), (d). It is instructive that the NPS manual *does* anticipate that corrections or amendments to a 6(f) map may sometimes be necessary, but critically, it stipulates that any such correction or amendment may *only* occur "[p]rior to the date of final reimbursement," i.e. when the grant closes, and thereafter, that "*[n]o changes may be made to the 6(f) boundary after final reimbursement unless the project is amended as a result of an NPS approved conversion.*" LWCF State Assistance Program Federal Financial Assistance Manual at 6-3 (emphasis added). NPS's decisions here, and the rationales NPS provides, are "plainly erroneous" and "inconsistent with [NPS's] regulation[s]." <u>Bergamo</u>, 192 F.3d at 80.

Third, NPS's argument, that it retains inherent residual authority to reconsider its own decisions, is meritless in this case, in light of the contrary authority of LWCFA and its regulatory regime as well as the unreasonably long five-year delay in NPS's supposed "correction" of the 6(f) map. <u>See</u> <u>Chao v. Russell P. Le Frois Builder, Inc.</u>, 291 F.3d 219, 229 n.9 (2d Cir. 2002) (agency's power to reconsider "applies regardless of whether the applicable statute and agency regulations expressly provide for such review, *but not* where there is contrary legislative intent or other affirmative evidence") (emphasis in original) (quotations omitted); <u>Dun & Bradstreet Corp. Found. v. U.S. Postal Serv.</u>, 946 F.2d 189, 193 (2d Cir. 1991) (allowing agency to reconsider decision "only if it does so within a reasonable time period"); <u>Gratehouse v. United States</u>, 512 F.2d 1104, 1109 (Ct. Cl. 1975) ("[A] short and reasonable time period will vary with each case,

but absent unusual circumstances, the time period would be measured in weeks, not years."); Bookman v. United States, 453 F.2d 1263, 1265 (Ct. Cl. 1972) (allowing reconsiderations "as long as the administrative action is conducted within a short and reasonable time period"); see also, e.g., Belville Min. Co. v. United States, 999 F.2d 989, 997-1000 (6th Cir. 1993) (allowing reconsideration after eight months); Friends of Iwo Jima v. Nat'l Capital Planning Comm'n, 176 F.3d 768, 775 n.4 (4th Cir. 1999) (seven months); Bookman, 453 F.2d at 1264 (four months).[2]

It is crystal clear that all of these facts and precedents taken together compel the conclusion that NPS acted outside of its legal authority when it amended the 6(f) map to remove federal protection over the Tobacco Warehouse and Empire Stores, more than *five years* after the LWCF grant had closed, without compliance with the statutorily required conversion process. OPRHP had over two years, while the LWCF grant was open, to propose corrections to the 6(f) map, and it failed to do so. Once a LWCF grant closes, Congress's clear and unmistakable intention, enshrined not only in the statutory language but also NPS's regulations and procedures, was to ensure that the public receive replacement property for any property removed from a 6(f) map. Contrary to defendants' arguments — and perhaps contrary to plaintiffs' hopes — the outcome here does not forever forbid excision of the structures from the 6(f) map at some future date as a matter of federal law. It simply requires that the federal government keep its promise, as embodied in LWCFA, that parkland developed or improved with federal taxpayers' money will remain available for public use, or at the very least, will be replaced with substitute parkland of equal or greater value. That promise must be kept.

---

[2] To be clear, the Court does not hold that NPS has no residual authority per se to reconsider a determination after the final deadline for doing so. The Court simply holds that if such authority exists it has long expired where, as here, reconsideration is pursued a half a decade after the final deadline for changes or amendments.

9

Accordingly, given the one-sided nature of the present dispute, factually and legally, summary judgment is entirely appropriate on plaintiffs' related LWCFA and APA claims. See Anderson, 477 U.S. at 251-52, 106 S. Ct. at 2512. As for plaintiffs' other federal claims under NEPA and NHPA, there appears to be no dispute that violations of LWCFA and APA would also implicate those additional statutes, given that the formal LWCFA conversion process encompasses NEPA and NHPA review. So, given further that the proper remedy here is to vacate and to remand, the NEPA and NHPA claims are effectively moot and will be dismissed without prejudice on that basis.

### B. Supplemental Jurisdiction

All that remains now is a single cause of action, asserting New York's common law public trust doctrine. Given the totality of litigation circumstances, the Court will decline to exercise supplemental jurisdiction over this orphaned claim, especially given the summary resolution of the federal claims and the existence of a full-blown parallel state court proceeding involving the very same cause of action.

In line with 28 U.S.C. § 1367(c), which codified the earlier doctrine of pendent jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim . . . if—
>
> > (1) the claim raises a novel or complex issue of State law, . . .
> > (3) the district court has dismissed all claims over which it has original jurisdiction, or
> > (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

There is no question that, as implemented by settled law, all of these provisions are in play, and declination of supplemental jurisdiction is most certainly warranted.

First, under 28 U.S.C. § 1367(c)(3), it is well settled that "[i]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998). Disposition without trial is the key element. Thus, it is an equally appropriate conclusion when the federal claims are eliminated at summary judgment. See, e.g., Rowe v. Jagdamba, Inc., 302 F. App'x 59, 62-63 (2d Cir. 2008) (declination proper after granting summary judgment on plaintiff's federal claims); Buti v. Perosa, S.R.L., 139 F.3d 98, 107 (2d Cir. 1998) (declination proper after granting summary judgment to plaintiffs both on their federal claim and on defendant's federal counterclaims).

More specifically, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988); see also Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir. 2004) (once federal claims have been eliminated, a court then "must reassess its jurisdiction over the case by considering several related factors — judicial economy, convenience, fairness, and comity"); Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 103 (2d Cir. 1998) (citing Carnegie-Mellon, 484 U.S. at 350, 108 S. Ct. at 619). For example, courts may properly retain supplemental jurisdiction where elimination of the federal claims occurs at trial, after trial, or just before trial, raising concerns that the resources of both the parties and court may be wasted, causing unfairness to the parties. See, e.g., Uzan, 388 F.3d at 56 (upholding exercise of supplemental jurisdiction after court issued a 173-page final judgment and "spent considerable time dealing with the legal issues and becoming fully conversant with the facts"); Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1191-92 (2d Cir. 1996)

11

(affirming exercise of supplemental jurisdiction nine days before trial date); Purgess v. Sharrock, 33 F.3d 134, 139 (2d Cir. 1994) (affirming retention of supplemental jurisdiction at the close of defendants' case at trial); Raucci v. Town of Rotterdam, 902 F.2d 1050, 1055 (2d Cir. 1990) (affirming exercise of supplemental jurisdiction after discovery had been completed, the court had decided three dispositive motions, and the case was ready for trial). By contrast, when federal claims are eliminated "well before trial" and "before significant discovery had taken place," the factors tilt in favor of declining supplemental jurisdiction. First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 183 (2d Cir. 2004). Given this guidance, the choice is fairly obvious here.

Every indication plainly points to the appropriateness of declining to exercise supplemental jurisdiction. An award of relief or dismissal has been ordered on all of the federal claims, without any discovery and on summary judgment. The state law claim was shunted aside on the preliminary injunction motion, and no significant federal judicial resources have been expended on it. Indeed, judicial economy would be disserved by the exercise of this Court's supplemental jurisdiction, since a parallel and concurrent state court proceeding on an almost identical cause of action is well-advanced. Cf. Uzan, 388 F.3d at 56 n.14 (noting the absence of any state court proceeding as a factor in favor of exercising supplemental jurisdiction). And particularly given that a dispositive motion is already sub judice in state court, the parties will not be unfairly inconvenienced by this Court's declination of jurisdiction. The principles and objectives of comity, moreover, will be honored and enhanced by declination as well.

Concerns of comity, it should be underscored, are particularly important here, where the state law claim involves a potentially difficult and novel question of New York law — that is, whether state governmental entities have breached a trust created at common law by New York

state courts, unhinged to any federal constitutional or statutory provision. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966). When the "state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts," and "[t]his is particularly true if the federal claim on which the state claim hangs has been dismissed." Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir. 1998). What is left here is an obvious dispute as to the proper application of a New York common law doctrine, including its interaction with various New York statutes regulating state and local governmental entities — such as N.Y. Pub. Lands Law § 30-a, and the Urban Development Corporation Act, N.Y. Unconsol. Law § 6251 et seq. — and the proper interpretation and reach of the New York Court of Appeals' decision in Friends of Van Cortlandt Park v. City of New York, 95 N.Y.2d 623 (2001). This dispute presents complex questions set against the backdrop of evolving New York law and public policy, very much involving "the relationship between state and municipal entities," Seabrook, 153 F.3d at 73, which should properly be addressed by New York state courts in the first instance.

Additionally and finally, the existence of the parallel, ongoing state court proceeding also provides a compelling reason for declining supplemental jurisdiction under 28 U.S.C. § 1367(c)(4). See, e.g., Kleiman v. O'Neill, No. 03-CV-3829, 2008 WL 5582453, at *3 (E.D.N.Y. Dec. 30, 2008); Philip Morris Inc. v. Heinrich, No. 95-CV-0328, 1998 WL 122714, at *1-2 (S.D.N.Y. Mar. 19, 1998).

Accordingly, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claim. That claim is dismissed is without prejudice. See Benjamin v. New York City Dept. of Health, 144 F. App'x 140, 143 (2d Cir. 2005).

IV. **CONCLUSION**

For all the foregoing reasons, plaintiffs' motion is granted as to the LWCFA and APA claims. The challenged NPS decisions are vacated, and this matter is remanded for further administrative proceedings consistent with this order. The injunction granted preliminarily is otherwise dissolved, given that any authority or right to act in reliance on the revised 6(f) map is annulled by the order to vacate. All other claims are dismissed without prejudice.

The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       July 11, 2011

                                        s/ENV

                                    ERIC N. VITALIANO
                                    United States District Judge